UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JESSICA D. HALBESLEBEN,<br><br>                    Petitioner,<br><br>vs.<br><br>WARDEN BARLOW,<br><br>                         Respondent. | Case No. 1:19-CV-00138-REB<br><br>**MEMORANDUM DECISION**<br>**AND ORDER** |

Petitioner Jessica D. Halbesleben filed a Petition for Writ of Habeas Corpus challenging her state court convictions and sentences. (Dkt. 1.) Respondent Warden Barlow has filed a Motion for Summary Dismissal, contending that Petitioner's claims are procedurally defaulted. (Dkt. 13.) Petitioner has filed a Reply (Dkt. 15), and the matter is now ripe for adjudication.

All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt.10.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. The Court takes judicial notice of the records from Petitioner's state court proceedings that have been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

After carefully reviewing the record and the arguments of the parties, the Court concludes that Petitioner's claims are procedurally defaulted, as Respondent contends.

**MEMORANDUM DECISION AND ORDER - 1**

However, rather than spending additional time on whether Petitioner can show an adequate ground to excuse the procedural default of her claims, the Court has reviewed the merits of Petitioner's claims. Because federal habeas corpus is a very narrow remedy, the Court concludes that the claims are subject to denial on the merits. The Court will provide Petitioner with an opportunity to respond to this Order showing why her claims should not be denied on the merits.

## BACKGROUND

In a criminal action in the Fourth Judicial District Court in Ada County, Idaho, Petitioner was charged with four counts of felony injury to child. (State's Lodgings A-1, pp. 6-8.) The charges arose from Petitioner's and her husband's neglect and abuse of their seven children, ages one to fourteen, who were found living in deplorable conditions, with the older two children being permitted to repeatedly sexually molest three of the younger children. The Idaho Court of Appeals found that "all of the children were subjected to years of physical, psychological, and sexual abuse," and Petitioner "was party to or had knowledge of much of this abuse, yet most of it went unreported to authorities." (State's Lodging C-10, pp. 1-2.)

Ada County District Judge Michael R. McLaughlin presided over Petitioner's and her husband's criminal cases, while a different judge handled the parental rights and child protection cases. Ada County Prosecuting Attorney Shelley Armstrong (later known as Shelley Akamatsu) represented the State in the criminal matters. Tyler D. Smith, conflict counsel for the Ada County Public Defender's Office, represented Petitioner.

Petitioner entered into a plea agreement with the State. The State agreed to dismiss two charges and recommend a sentence of one year fixed and ten years indeterminate on each remaining count, with the fixed portions of the sentences to be served consecutively before Petitioner would be eligible for parole. Petitioner was free to argue for a lesser sentence. The plea agreement specifically stated: "The parties intend that the Defendant serve no more than two years before becoming parole eligible should the Court follow the State's recommendation." (State's Lodging A-1, p. 94.)

After Petitioner completed a Guilty Plea Questionnaire (State's Lodging A-1, pp. 87-92) and participated in a change of plea hearing colloquy reviewing the stipulated terms and her waiver of constitutional rights with the trial court, her guilty pleas were accepted by the court. (State's Lodging A-3, pp. 4-8.)

At sentencing, the prosecutor elaborated on the gravity of the facts that supported the convictions:

> In the last ten years, there has not been a worse case of child abuse in this county than what this defendant managed to accomplish in 13 years. From the minute she began having children, these babies were at risk. None of these children ever had a chance because they were born to the defendant and her husband.

(State's Lodging A-4, p. 2.) The prosecutor described the abuse to the children, including that the father raped the oldest daughter continually, and the parents did not stop the older children from sexually molesting and raping the younger children continually. (*Id*., pp. 2-9.) She quoted a preschool teacher of the children, who said: "These two children, T.H. and V.H. were the worst abuse and neglect cases I have ever dealt with in my 30 years of

teaching young special needs children." *Id.*, p. 6. At four years old, one of the children was so disturbed he was diagnosed as psychotic, and both parents signed over their parental rights to the state, leaving eight of the nine children at home. The prosecutor described how the eight children were starving, and Petitioner was out in the garage smoking methamphetamine. The prosecutor said, "Her contribution in the world is making eight wards of the state for the next 16 years." *Id.* at 6. At the end of her remarks, she said, "Anything less than 1 year fixed followed by 9 indeterminate for 10, consecutive to 1 plus 9 for 10, would depreciate the seriousness of what she did." *Id.* at 9-10.

Petitioner's attorney acknowledged the frightening living conditions of the children but painted a picture of Petitioner as a co-dependent spouse who was treated by her husband as "chattel." Petitioner's husband wanted to have a child year after year, and they did so, up to a household of nine children. He said that there is no medical diagnosis of starvation in the record, that she attempted to stop the older children from molesting the younger children by locking the older ones in their bedroom at night, and that she did adequately care for the children from time to time before her brother introduced her to methamphetamine. Petitioner's attorney discussed all of the preventive measures she had taken: she was no longer able to bear children, she had divorced her husband, and she had terminated her parental rights. Petitioner's attorney cited to the psychological expert's report to show she could be rehabilitated. Petitioner's attorney asked for her to be placed on probation or in the retained jurisdiction program. *Id.*, pp. 10-25.

**MEMORANDUM DECISION AND ORDER - 4**

The sentencing court indicated that it had read the investigative reports, the reports from Health and Welfare, the presentence report, the psychological evaluation of Craig Beaver, a Health and Welfare plan regarding the children, and the criminal case file. *Id.*, p. 1. The court had also already sentenced Petitioner's husband, who, the Court said, "blamed absolutely all of this on [her] in his sentencing which I don't agree with." Id., p. 29. The court also said, "[Y]ou've led a law-abiding life other than for these very, very serious offenses." *Id.*, p. 33.

The sentencing court did not follow Petitioner's request for probation or the prosecutor's recommendation for consecutive sentences of one year fixed with ten years indeterminate. The court sentenced Petitioner to two consecutive terms of three years fixed, with seven years indeterminate, requiring her to spend six years in prison before being parole-eligible. Petitioner's state judgment of conviction was entered in May 2006. (State's Lodging A-1, pp. 115-17.)

Thereafter, Petitioner did not file a direct appeal, but filed a Rule 35 motion for reduction of sentence. That motion was denied by the state district court, which concluded: "Clearly, society needs to know the kind of awful conditions that these children were living in and the ultimate permanent substantial emotional scarring that these children will bear for the rest of their lives, that significant punishment was merited under these circumstances." (*Id.*, p. 133.)

Upon denial of the Rule 15 motion, Petitioner pursued an appeal, as well as a direct appeal pursuant to an amended judgment, and a post-conviction relief petition. She received no ultimate relief in her state court challenges, which were heard by the Idaho

**MEMORANDUM DECISION AND ORDER - 5**

Court of Appeals in a consolidated appellate action. (State's Lodgings A-2, pp. 15-17, B-1, pp. 80-82, and C-1 through C-10.) In that action, the Idaho Court of Appeals concluded that the "prosecutor's argument at the sentencing hearing did not undermine the sentencing recommendation and did not breach the plea agreement" and that Petitioner's sentences were not excessive. (State's Lodging C-10, p. 15.) In particular, the  the Idaho Court of Appeals found and concluded:

> The facts of this case are extraordinary. Our review of the record reveals a severe degree of abuse and neglect inflicted on Halbesleben's children over a long period of time. The serious nature of these crimes merits harsh punishment.

(*Id.*, p. 12.)

Petitioner contended on appeal that the prosecutor had breached the plea agreement by undermining her "recommendation" to the court of one year fixed by making an argument inconsistent with the minimal sentence she recommended. *See id*. The Idaho Court of Appeals rejected the claim, though Judge Gutierrez dissented: "The lengthy argument presented at sentencing by the state, with repeated vigorous emphasis on the horrendous abuse and neglect suffered by the children, can only be viewed as disavowing the plea agreement sentencing recommendation." *Id*. at 878 (Gutierrez., J., dissenting). The Idaho Supreme Court denied the petition for review.

On July 18, 2018, Petitioner appeared for her third parole hearing. The Idaho Commission of Pardons and Parole (ICPP) denied parole, citing prosecutor Shelley (Armstrong) Akamatsu's voiced opposition to Petitioner being released on parole and the serious nature of the crimes. (Dkt. 5, Exhibit A; State's Lodging D-1, pp. 16-17.)

At that time, the ICPP scheduled Petitioner for reconsideration of parole in July

2020. (*Id*. at 17.) The Idaho Department of Correction website shows that Petitioner was

not paroled in 2020, but that she has a parole hearing date scheduled for January 2021.[1]

Petitioner filed her Petition for Writ of Habeas Corpus in federal court on April 9,

2019 (mailbox rule).[2] She asserts three claims:

- The prosecutor's insertion of her opinion into parole proceedings is a breach of the plea agreement and a violation of Petitioner's due process rights.

- Petitioner has a "liberty interest" in being afforded "good time" credit.

- The prosecutor committed prosecutorial misconduct in breaching the terms of the plea agreement when she argued against parole at Petitioner's parole hearing.

(Dkt. 1, pp. 7-8.)

This Court stayed Petitioner's federal case while she returned to state court to

pursue these claims in a state petition for writ of habeas corpus. (State's Lodging D-1, pp.

4-15.) The case was heard and summarily dismissed by a state magistrate judge on the

following grounds: (1) the breach of plea agreement claim was a challenge to the

underlying conviction and sentence that could not be raised in a state habeas corpus

action; (2) Petitioner has no liberty interest in being paroled; and (3) there was no

authority to support the claim that a prosecutor could not express her opinion to the

parole commission concerning whether the defendant should be paroled, and, moreover,

---

[1] *See* https://www.idoc.idaho.gov/content/prisons/offender_search/detail/80118?last_page=.

[2] *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

there was no express term in the plea agreement prohibiting the prosecutor from making a parole recommendation. (*Id*., pp. 43-46.) The state judge noted that the parole hearing minutes showed that parole was denied due in part to the nature of Petitioner's crime, and not just the prosecutor's statement, termed "negative official input." (*Id*.; *see* State's Lodging D-1, p. 17.)

Under the Idaho Rules of Civil Procedure, Petitioner should have filed an appeal from the magistrate court to the state district court. Being unaware of that requirement, she instead filed a notice of appeal with the Idaho Supreme Court. The magistrate judge denied her request for an appellate fee waiver, finding that she had sufficient funds to pay the fee "since she is appealing this action directly to the Idaho Supreme Court. *See* I.R.C.P. 83(a); I.C. § 31-3220A(14)(b)."

Deciphering the rule and statute cited by the state magistrate court, this Court notes that Idaho Rule of Civil Procedure 83(a) requires that certain types of cases must be appealed from the magistrate court directly to the Idaho Supreme Court, including petitions for termination of parental rights and petitions for adoption.  Some other certain types of case may be appealed where permission has been granted, including child custody and Child Protective Act proceedings. Title I.C. § 31-3220A(14)(b) states that "The court may dismiss an action or a portion of the action under this section, before or after service, on its own motion or by motion of a party, upon a finding that ... [t]he action is frivolous."

The state court's citation of these provisions in the order denying in forma pauperis status and the request for appointment of an attorney appears to have been a

shorthand way to say that Petitioner's case was not a case that could be appealed directly to the Idaho Supreme Court, and, therefore, it was a frivolous appeal. Had the magistrate court included the reasons instead of merely the citations, then Petitioner would have been able to remedy her appeal error by filing a timely appeal in the state district court. Petitioner herself could have looked up these citations, but, because she has no legal training, she presumably did not know the right question to ask, or answer to seek.

Because the magistrate's message about her frivolous appeal was provided to Petitioner in code (no pun intended) rather than in plain words, Petitioner was unaware that she was making a jurisdictional mistake, and therefore, continued with her appeal to the Idaho Supreme Court.

The Idaho Supreme Court entered its first "Order Conditionally Dismissing Appeal" on September 30, 2019. (State's Lodging D-1, p. 78.) At that moment, Petitioner still had time to remedy her error and file a notice of appeal in the state district court, as the magistrate judge's order of dismissal was entered on September 3, 2019, and the deadline for appeal is 42 days. However, as with the magistrate judge order, the Idaho Supreme Court's order of conditional dismissal also did not make plain that Petitioner could not appeal her particular case from the magistrate court directly to the Idaho Supreme Court.[3] Rather, the order focused on payment of the filing fee, as the magistrate judge had denied Petitioner's in forma pauperis request.

---

[3] The Idaho Pro Se Appellate Handbook describes how an appeal can be taken from the magistrate court to the Idaho Supreme Court, but it does not describe the detail about the fact that most such cases begin with review in the district court and that an appeal directly to the appellate court is not the automatic route. For the pro se litigant, this creates an unfortunate, and no doubt unintended (given the very purpose of the Handbook), detour. *See* https://isc.idaho.gov/files/IdahoAppellateInformation

On February 27, 2020—after Petitioner had paid $100.00 toward the appellate filing fee to satisfy the first conditional order—the Idaho Supreme Court issued a second "Order Conditionally Dismissing Appeal" which specifically stated that there had been no final, appealable order entered in the state district court after the magistrate judge's entry of dismissal and judgment. (State's Lodging E-1.) Petitioner filed a response stating that, as a pro se litigant, she was unaware that she had to proceed to the district court first. (State's Lodging E-2.) The Idaho Supreme Court thereafter dismissed the appeal because there "was no appealable district court order or judgment from which a Notice of Appeal may be taken pursuant to I.A.R. 11(a). (State's Lodging E-3.)

Petitioner next filed a motion in this Court to reopen the case. She also filed an "amended petition," which was nothing more than a copy of her motion to reopen the case, and so it was stricken to avoid confusion. The Court ordered Respondent to respond to the allegations, and Respondent submitted the Motion for Summary Dismissal now at issue. (*See* Dkts. 7-9.)

## STANDARDS OF LAW

The Rules Governing § 2254 Cases ("Habeas Rules") authorize the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits," as well as those records subject to judicial notice, "that the petitioner is not entitled to relief in the district court." Habeas Rule 4.

---

Handbook.pdf. The same information appears on this Idaho government website: https://isc.idaho.gov/appeals-court/checkists [sic].

Where appropriate, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include the following: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

**MEMORANDUM DECISION AND ORDER - 11**

"To qualify as an adequate procedural ground, a state rule must be firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted). That is, the state procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default.'" *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).

A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003). A rule will not be deemed independent of federal law "if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed." *Id.* (internal quotation marks and alteration omitted).

A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Id.*

Federal courts are not required to address a procedural issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518 (1997); *cf. Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar"). Thus, where a procedural question presents a

**MEMORANDUM DECISION AND ORDER - 12**

complicated question of law and is unnecessary to a disposition of the case, a court may proceed to the merits. *Hudson v. Jones*, 351 F.3d 212 (6th Cir. 2003); *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir.1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted); *cf*. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Federal habeas corpus relief may be granted where a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state appellate court did not decide a properly-asserted federal claim, if the state court's factual findings are unreasonable under § 2254(d)(2), or if an adequate excuse for the procedural default of a claim exists, then a federal district court reviews the claim de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In such instances, a district court can draw from both United States Supreme Court and well as circuit precedent, limited by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Under de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a state court factual determination is unreasonable, or if there are no state court factual findings, the federal court is not limited by § 2254(e)(1), the federal district court may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

**MEMORANDUM DECISION AND ORDER - 13**

# DISCUSSION

## 1. Procedural Issues

It is undisputed that Petitioner did not raise any of her federal claims related to her parole denial in her direct appeal, appeal of her Rule 35 motion for reduction of sentence, or post-conviction relief petition, because Petitioner was not yet eligible for parole at that time. Petitioner raised her claims in her state habeas corpus petition, but, as noted above, she did not follow the proper appellate procedure to appeal her claims.

Respondent has shown that the procedural rules barring her appeal were adequate, having been consistently and regularly applied in case law before Petitioner's appeal was adjudicated. See Dkt. 13-1. Idaho courts previously have held that a "petition for a writ of habeas corpus, being a pleading analogous to a complaint, is governed by the Idaho Rules of Civil Procedure." *Freeman v. Idaho Dept. of Corr.*, 71 P.3d 471, 474 (Idaho Ct. App. 2003); *see also Lopez v. State*, 919 P.2d 355, 356 (Idaho Ct. App. 1996) (same). Idaho Rule of Civil Procedure 83(a)(2)(A) governs appeals in regular civil cases from the magistrate court, which must be appealed to the district court, not the Idaho Supreme Court. I.R.C.P. 83(a)(2)(A).

The Idaho Supreme Court recognized that Petitioner had not properly appealed the denial of her state habeas petition to the district court when it noted the judgment was entered by a magistrate judge and explained, "there has been no final, appealable judgment or order entered in the District Court from which a Notice of Appeal may be taken, pursuant to Idaho Appellate Rule 11(a)." (State's Lodging E-1.) This rule is

**MEMORANDUM DECISION AND ORDER - 14**

jurisdictional. *See Callaghan v. Callaghan*, 125 P.3d 1061, 1063 (Idaho 2005) ("Because Douglas did not file a notice of appeal within forty-two days after entry of the contempt order, the district court did not have jurisdiction to consider the appeal from that order and properly dismissed it."); *Palmer v. Wellard*, 541 P.2d 621, 622 (Idaho 1975) ("[T]he district court has no jurisdiction to consider appeals from the magistrates division of the district court when notice of appeal has not been timely filed.").

The Court also agrees with Respondent's assertion that this state rule – governing how appeals within the state court system are organized – is not dependent upon or intertwined with federal law. Therefore, the Court concludes that the state procedural rule barring Petitioner's claims in state court was an adequate and independent ground.

Petitioner argues that, as a pro se litigant, she had "minimal knowledge of the law," was never appointed an attorney to help her, and believed that the proper step to file an appeal was to file in the Idaho Supreme Court, rather than the state district court. Petitioner requests that this Court permit her to "rectify [her] mistake, via taking leave to properly exhaust [her appeals]." (Dkt. 15-1, pp. 3-4.) This Court has no jurisdiction over the state courts and cannot "remand" the case to the state courts and ask them to rehear the case. Ordinarily, the Court would give Petitioner the opportunity to demonstrate that she has an adequate ground showing excusing her procedural default. Here, the Court will not do so, because even if the Court heard Petitioner's claims on the merits, she would not be entitled to relief.  Even so, the Court will provide Petitioner a final opportunity to respond to this notice of intent to deny the claims before the Court dismisses the claims and enters judgment.

### 2. First Claim

Petitioner's first claim is that the prosecutor's insertion of her opinion into parole proceedings is a breach of the plea agreement. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 263 (1971). Plea agreements are contracts, and the government is held to the literal terms of the agreement. *United States v. Johnson*, 187 F.3d 1129, 1134 (9th Cir. 1999). A prosecutor who breaches a promise that induced a guilty plea violates the defendant's due process rights. *Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006)(en banc)(relying on *Santobello*).

Fleshing out this area of law after *Santobello*, in *United States v. Benchimol*, 471 U.S. 453 (1985), the United States Supreme Court addressed how narrow it would construe a "breach" of a plea agreement. There, the defendant appealed his federal sentence, contending that the prosecutor had breached the plea agreement by failing to "enthusiastically" support the recommendation, in turn, causing the sentencing court to impose a greater sentence than the parties had suggested under the plea agreement. *Id*. at 454. The Ninth Circuit Court of Appeals agreed, concluding that the prosecutor had breached the plea agreement because it "made no effort to explain its reasons for agreeing to recommend a lenient sentence but rather left an impression with the court of less-than-enthusiastic support for leniency." *Id*. at 455.

In reversing and reinstating the sentence, the United States Supreme Court held that an agreement to recommend a particular sentence does not encompass an implied

duty to "enthusiastically" make the recommendation. *Id*. at 456. The Supreme Court questioned whether "Rule 11(e) allows bargaining about degrees of enthusiasm" that the prosecutor must exhibit when making a stipulated sentence recommendation, but, importantly, observed that, even if that was allowed, "there appears to have been none here." *Id*. The *Benchimol* Court concluded that a prosecutor fulfills its duty with regard to a promise to make a recommendation with respect to sentence *by making the promised recommendation*, and that "it was error for the Court of Appeals *to imply as a matter of law a term which the parties themselves did not agree upon*." *Id*. at 456 (emphasis added).

In a case with similar facts to Petitioner's case, *In re DeLuna*, 126 Cal. App. 4th 585, 598–99 (2005), *as modified* (Feb. 16, 2005), *as modified on denial of reh'g* (Mar. 3, 2005), the question was whether a prosecutor breached a plea agreement by attending a later parole hearing of the defendant and opposing parole "based on the gravity of the commitment offense." The trial court reasoned that the 1985 plea bargain which agreed to a plea to second degree murder estopped the prosecutor from arguing at the parole hearing that defendant should be incarcerated longer "than the existing matrix designation" based on the nature of the commitment offense. The California Court of Appeals disagreed:

> [W]e conclude that this part of the court's order is unauthorized as it lacks evidentiary support. We see nothing in the record indicating that the 1985 plea bargain included a promise by the prosecutor either that defendant would be released on parole at any specific time, that defendant would be released according to the regulatory matrix, *or that the prosecutor would cease arguing on a given date that*

**MEMORANDUM DECISION AND ORDER - 17**

> *defendant's second degree murder was especially callous.*
> Absent such evidence, defendant cannot establish that his
> continued incarceration is a breach of his bargain. The district
> attorney's office *is not bound to honor a promise it did not
> make.* (*People v. Dickerson* (2004) 122 Cal.App.4th 1374,
> 1386, 19 Cal.Rptr.3d 545.)

*Id.* at 598–99 (emphasis added).

Under a similar fact pattern, in *Atkins v. Davison*, 687 F. Supp. 2d 964 (C.D. Cal.

2009), the court concluded:

> [T]he record is clear that Petitioner received the
> benefit of her plea bargain—in exchange for pleading guilty
> to first degree murder, the prosecution recommended that she
> be sentenced to life in prison rather than death. The trial court
> accepted the prosecution's recommendation and sentenced
> Petitioner accordingly. According to the plea transcript, a life
> imprisonment sentence was the only benefit Petitioner would
> receive under the plea agreement. (See Respondent's
> Lodgment No. 4 at 6, 10). Petitioner has not alleged, and the
> record does not indicate, that the prosecution *specifically
> promised that, as a condition of the plea agreement, the
> offense would be characterized or described in a particular
> manner in future parole hearings.* Thus, Petitioner's guilty
> plea did not "rest[ ] in any significant degree on [such] a
> promise or agreement of the prosecutor *so that it can be said
> to be part of the inducement or consideration"* of the plea
> agreement. *See Santobello*, 404 U.S. at 262.

*Id.* at 974–75 (C.D. Cal. 2009) (emphasis added).

In Petitioner's plea agreement, the parties said that their intent was that the

Petitioner (the Defendant in the plea agreement) "serve no more than two years before

becoming parole eligible *should the Court follow the State's recommendation.*" (State's

Lodging A-1, p. 94 (emphasis added).) This intention provision speaks in terms of parole

"eligibility," and not as an intention that the prosecutor would remain neutral about or aid

**MEMORANDUM DECISION AND ORDER - 18**

in the granting of parole. Moreover, the parties' stated "intention" that Petitioner serve no more than two years before becoming parole eligible is attached to and dependent upon *the contingency* that the court would follow the State's recommendation, which it did not. Therefore, any argument that the prosecutor breached an expressed or implied duty in the plea agreement cannot be based on that provision, which was nullified by the state court's decision to depart from the recommendation that Petitioner serve no more than two years before parole eligibility.

There is no other provision in the written plea agreement addressing the parties' duties regarding parole. As in *DeLuna* and *Atkins*, there was no agreement that the prosecutor would not give an opinion on parole eligibility in future parole hearings. While the *DeLuna* and *Atkins* decisions are not binding precedent, they are instructive for their well-reasoned analysis of similar fact patterns.

Finally, there is no United States Supreme Court or Ninth Circuit precedent governing instances where (1) the parties stipulated to a certain sentence contingent on the court adopting the State's recommendation; (3) the court did not adopt the State's recommendation; (4) the parties did not stipulate that the prosecutor could not appear at a future parole hearing to contest parole; and (5) the prosecutor later appeared at a parole hearing and argued against parole. *Santobello* and *Benchimol* do not require a ruling favorable to Petitioner.  Rather, both decisions emphasize that, for there to be a breach, the provision must be clearly expressed in the plea agreement terms. Here, Petitioner's plea agreement does *not* contain a parole-related term that supports her argument. This

**MEMORANDUM DECISION AND ORDER - 19**

Court is constrained to follow precedent in habeas corpus proceedings. Accordingly, this claim appears subject to denial.

### 3.  Second Claim

Petitioner's second claim is that she had a "liberty interest" in being afforded "good time" credit. However, as the Idaho Court of Appeals has explained:

> In 1986 the Legislature fundamentally altered the "good time" system. With respect to sentences for crimes committed on or after July 1, 1986, the Legislature eliminated the formula reduction previously available as a matter of right under I.C. § 20–101A. In its place the Legislature enacted a narrow system of "meritorious" sentence reduction. Such a reduction "may be awarded when an inmate completes an extraordinary act of heroism at the risk of his own life or for outstanding service to the state of Idaho which results in the saving of lives, prevention of destruction or major property loss during a riot, or the prevention of an escape from a correctional facility." I.C. § 20–101D.

*State of Idaho v. Amerson*, 742 P.2d 438, 439 (Idaho Ct. App. 1987).

There are no facts in the record showing that Petitioner qualifies for pre-1986 or post-1986 good time credit application.

Additionally, there is "no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *See Swarthout v. Cooke,* 562 U.S. 216 (2011); *Board of Pardons v. Allen*, 482 U.S. 369, 380-81 (1987). Therefore, an inmate can bring a procedural due process challenge to a parole denial decision only when there is a *state-created* liberty interest in parole. *Id*. at 219-20. Federal courts look to decisions of the highest state court to determine whether there is a state-created liberty interest in parole

**MEMORANDUM DECISION AND ORDER - 20**

arising from state statutes. *Sass v. California Board of Prison Terms*, 461 F.3d 1123,

1127 (9th Cir. 2006)("a State's highest court is the final judicial arbiter of the meaning of

state statutes").[4] In *Banks v. State of Idaho*, 920 P.2d 905 (Idaho 1996), the Idaho

Supreme Court held that, as a result of Idaho's statutory scheme, "parole is not an

automatic right or liberty interest." *Id*. at 908.

Therefore, Petitioner's claim that she is entitled to "good time credits" or has a

"liberty interest" in parole is unsupported by the facts and law. This claim appears subject

to denial on the merits.

### 4. Third Claim

Petitioner contends that prosecutorial misconduct in breaching the terms of the

plea agreement occurred when the prosecutor made her statement to the Commission.

This claim is subject to the same legal analysis as above, because it is dependent upon a

breach of the plea agreement.  Petitioner has not shown such a breach and, therefore, this

claim also appears subject to denial.

---

[4] *Sass* was overruled on other grounds by *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc) (any right to release on parole arose from state law, and did not arise from federal constitution), which itself was overruled by implication in *Swarthout v. Cooke*, 562 U.S. at 220-21 ("No opinion of ours supports converting California's 'some evidence' rule into a substantive federal requirement. The liberty interest at issue here is the interest in receiving parole when the California standards for parole have been met, and the minimum procedures adequate for due-process protection of that interest are those set forth in *Greenholtz* [*v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 12 (1979).]").

**MEMORANDUM DECISION AND ORDER - 21**

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Summary Dismissal (Dkt. 13) is CONDITIONALLY GRANTED, because denial and dismissal of Petitioner's claims appears warranted based on the allegations in the Petition.

2. Petitioner may file a response showing that her claims should not be denied on the merits. The response shall be no longer than 10 pages and shall be filed within 28 days after entry of this Order.  Failure to take further action in this case during that time frame will result in dismissal of this case with prejudice for the reasons set forth herein, without further notice to Petitioner.

DATED:  December 17, 2020



_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge